STATE OF MAINE

PENOBSCOT, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-06-559
*JMJ - PEN - 4/16/2008*

STATE OF MAINE,

v.

DECISION

TRAVIS PICKELL,

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

MAY 1 0 2008

FILED & ENTERED
SUPERIOR COURT

APR 1 6 2008

PENOBSCOT COUNTY

Before the court is the defendant's motion to suppress. Marvin Glazier, Esq. for the defendant and Assistant Attorney General Patrick Larson for the State of Maine.

## Facts

On June 6, 2006, at 8:25 a.m., Sgt. Mark Brooks of the Maine State Police responded to a radio traffic call regarding a safety check on the northbound of I-95 just north of Newport. The officer found a disabled motor vehicle pulled to the far left of the Interstate. Upon approaching the vehicle, Sgt. Brooks asked the defendant why he was stopped on the left side of the Interstate to which the defendant responded his brakes were hot and he had stopped so they could cool off. Due to the California plates on the vehicle, Sgt. Brooks asked the defendant if he was from California. The defendant responded by saying he was from Maine. Sgt. Brooks asked the defendant where he was heading and the defendant indicated that he was heading to his home in Sidney after driving from California. Sgt. Brooks then advised the defendant that he was in Newport, approximately 40 miles north of Sidney. To this the defendant seemed puzzled. Due to this strange answer, Sgt. Brooks suspected that the defendant may be under the influence. He asked the defendant if he was operating the motor vehicle and the sergeant was presented a Maine driver's license by the defendant. A quick check

indicated that the defendant's right to operate was suspended in Maine effective May 26, 2006.

Sgt. Brooks then inquired of the defendant whether he had been drinking to which the defendant indicated "no." The sergeant then asked the defendant if he could search his motor vehicle to confirm that he did not have any alcohol or drugs in the vehicle. The defendant gave his consent to the officer to search the vehicle.

Sgt. Brooks searched the passenger compartment of the motor vehicle. During the search, the officer noted that the rear seat was folded down and he could see into the trunk. Inside the trunk he noticed a metal canister and asked the defendant what was inside the canister. The defendant responded that he had tools in the canister. Sgt. Brooks then asked the defendant if he could look into the trunk. The defendant gave his consent to search the trunk and retrieved the keys from the ignition and opened the trunk for the police officer. The defendant repeated for a second time that tools were inside the canister. Sgt. Brooks asked the defendant for permission to look into the canister and the defendant gave his consent. Sgt. Brooks opened the canister and found a large amount of marijuana in two separate plastic bags. He also observed two small plastic baggies which contained a clear substance which appeared to be some sort of a crystal type drug.

Following the finding of these items, the sergeant requested an agent from the Maine Drug Enforcement Agency ("MDEA") to respond to the scene. At 9:00 a.m. he placed the defendant under arrest for operating after suspension and placed him in handcuffs in the front seat of his cruiser. At approximately 9:44 a.m., Sgt. Brooks was in the cruiser with the defendant and advised him of his *Miranda* rights. The defendant acknowledged that he understood his rights and agreed to answer questions. James Carr of the MDEA joined the conversation with Sgt. Brooks. Defendant stated to the

officers that the drugs were not his and that someone must have taken his tools out of the metal container and placed the drugs inside.

During the search, other police officers found a firearm. They questioned the defendant about the firearm to which the defendant responded that he borrowed the car from a friend in California and he was going to sell the car for him. He also indicated he did not like guns and did not know the gun was there. He also indicated to Agent Carr that he did not know that drugs were there. He repeated that he did not put the drugs in the trunk but he did put the toolbox in the trunk before he left California.

When Agent Carr began asking the defendant about bringing drugs to Aroostock County, the defendant indicated he did not want to answer any more questions. At this point, the police officers stopped the questioning.

## Discussion

The questioning leading up to the search and the consent to the search was proper because the police officer was properly on the scene due to a disabled vehicle on the left breakdown lane portion of I-95. The defendant's strange response to the police officer as to where he was headed certainly aroused the suspicions of Sgt. Brooks. Although the sergeant did not find that the defendant was under the influence, he was certainly justified in being suspicious since the defendant did not know where he was on I-95. The questioning by the officer regarding the contents of the vehicle was proper since the defendant was not in custody. The questioning led to a consensual search.

When an officer conducts a warrantless search pursuant to consent, the State has the burden of proving by a preponderance of the evidence that:

(1)     The person who gave the consent had authority or apparent authority to do so. *State v. Libby*, 546 A.2d 444 (Me. 1988);

(2)     The scope of the consent included the area searched. *United States v. Snow*, 44 F.3d 133 (2nd Cir. 1995.

(3)     The consent was freely and voluntarily given. *State v. Seamen's Club*, 691 A.2d 1248 (Me. 1997).

In this case, the court finds that the defendant freely and voluntarily gave the police officer permission to search the vehicle including the trunk. Furthermore, the defendant was specifically asked whether he consented to the search of the metal canister. The defendant indicated consent to the search of the metal canister.

In this case, the court finds and concludes that the defendant had the authority to give consent to search the vehicle since it was under his control and dominion. Secondly, the scope of a consent included the passenger portion of the vehicle, the trunk, and the metal canister. Third, and finally, the court finds and concludes that the consent was freely and voluntarily given.

The court does find that the defendant was in custody at 9:00 a.m. Following being placed in custody, he was apprised of his *Miranda* rights as required since he was in custody. The court finds and concludes that the *Miranda* rights were properly given to him and that he voluntarily waived his right to remain his silent and expressed a willingness to talk to the police officer by giving them consent to search the vehicle.

For reasons stated above, the court hereby DENIES the defendant's motion to suppress.

Dated: April 15, 2008

Joseph M. Jabar
Justice, Superior Court

State of Maine v. Travis L. Pickell
Penobscot County Superior Court CR-2006-559

Assistant Attorney General:

    Patrick Larson, Assistant Attorney General
    Office of the District Attorney
    Bangor, ME 04401

    Telephone: 942-8552

Defense Counsel:

    Marvin Glazier, Esq.
    Vafiades, Brountas, & Kominsky
    Bangor, ME 04401

    Telephone: 947-6915